IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:17-350-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| ERNEST GEROD SIMS ) | |
| _____) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 699). Seeking compassionate release, the defendant states that he has serious medical conditions that render him particularly vulnerable if he contracts COVID-19.

In his reply (ECF No. 750), the defendant raises a new claim that if he were sentenced today, he would not have been subjected to harsh sentencing guidelines. In particular, he contends that he is no longer a Career Offender and that § 401 of the First Step Act changed the law so that prior predicate offenses used to enhance his sentence are no longer qualified for enhancement purposes under 18 U.S.C. § 851.

The government has responded in opposition (ECF No. 710), arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. Finally, the government argues that the defendant was properly designated as a Career Offender and would be so classified today. (ECF No. 780). The defendant contests this assertion. (ECF No. 801).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

> factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the Bureau of Prisons (BOP) bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from

4

the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

In his motion, the defendant attests that he filed a request with the Warden seeking home confinement or compassionate release, however, the Warden did not respond to his request. As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

## DISCUSSION

### I. *Motion for Compassionate Release*

In his motion (ECF No. 699) and supplements, the defendant asserts that the ongoing COVID-19 pandemic, coupled with his pre-existing medical conditions, place him at a particularly higher risk of dying or serious illness should he be reinfected with COVID-19. He contends that he has chronic obstructive pulmonary disease (COPD), congestive heart failure, and uses a defibrillator. In his reply, he also states that he has Type 2 diabetes and is obese.

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible

that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The government suggests that the defendant's medical problems appear to be properly treated by the BOP. Most significantly for purposes of the motion, is the fact that the defendant contracted COVID on January 19, 2021. He had no symptoms from the virus and has now fully recovered. CDC guidance indicates that a person can safely be with others after 10 days have passed if the person tested positive for COVID-19, was asymptomatic at the time of testing, and remains asymptomatic. BOP records indicate that the defendant was kept in isolation for 20 days, and has gone without experiencing any symptoms.

In his reply to the government's opposition, the defendant attests that he did contract COVID-19 and suffered for a period of about 10 days prior to being tested. He states that he went through several very ill moments while he had COVID-19.

The fact remains, however, that the CDC identifies COPD and congestive heart failure as medical conditions that pose risks for a person who contracts COVID-19. On this record,

6

the court will assume that the defendant has demonstrated an extraordinary and compelling reason for a sentence reduction due to his medical conditions.

This determination, however, does not end the court's inquiry. The court must now examine the factors under 18 U.S.C. § 3553(a), together with the defendant's post-sentencing conduct, and any other mitigating factors, to determine if the defendant's immediate release is appropriate.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense*. The defendant's Presentence Report (PSR) (ECF No. 518) reveals that he was a significant drug dealer who was held responsible for 63 grams of cocaine and 792.5 grams of crack cocaine. The Superseding Indictment charged that the defendant was involved in drug activity that began in 2007 and extended for a full 10 years before the defendant was charged on December 20, 2017. In addition, the defendant was determined to be a Career Offender and this designation drove his sentence.

The defendant was charged, along with 8 codefendants in a 42-count Superseding Indictment (ECF No. 346). The defendant was specifically charged as follows:

Count 1: Conspiracy to possess with intent to distribute and distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C);

Count 3: Possess with intent to distribute and did distribute a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)

Count 4: Possess with intent to distribute and did distribute a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

> Count 5: Felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e);
>
> Count 6: Knowingly used and carried a firearm during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and
>
> Counts 23, 25, 30: Knowingly and intentionally did use a communication facility, that is, a telephone, to facilitate the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. § 843(b).

The government filed an Information (ECF No. 308) pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on his convictions for numerous prior felonies.[1]

Pursuant to a written Plea Agreement (ECF No. 389), the defendant pleaded guilty to Count 3. He stipulated in his Plea Agreement in Paragraph 8 that he was a Career Offender pursuant to USSG § 4B1.1. He agreed not to contest the career offender designation and stipulated that he had 8 prior felony drug convictions that had become final. His plea

---

[1] The defendant's prior convictions, set out in the Presentence Report (ECF No. 518 at ¶ 11) include: (1) Possession of Crack Cocaine; Richland County General Sessions Court, Columbia, South Carolina; Docket #1993-GS-40-2094; Sentence date: February 4, 1994 (see ¶ 41); (2) Manufacture, Distribute, Ice, Crank, Crack Cocaine, 2nd Offense; Richland County General Sessions Court, Columbia, South Carolina; Docket 1996-GS-40-17470; Sentence date February 24, 1997 (see ¶ 45) ; (3) Distribution of Crack Cocaine, 2nd Offense; Richland County General Sessions Court, Columbia, South Carolina; Docket #1996-GS-40-17472; Sentence date: February 24, 1997 (see ¶ 45); (4) Possession of Crack Cocaine; Richland County General Sessions Court, Columbia, South Carolina; Docket #2007-GS-40-656; Sentence date: April 1, 2008 (see ¶ 48); (5) Possession of a Controlled Substance; Richland County General Sessions Court, Columbia, South Carolina; Docket #2010-GS-40-877; Sentence date: April 2, 2010 (see ¶ 52); (6) Possession of Less Than One Gram of Methamphetamine or Cocaine Base, 2nd Offense; Richland County General Sessions Court, Columbia, South Carolina; Docket #2011-GS-40-2414; Sentence date: November 28, 2011 (see ¶ 55); (7) Possession of Other Controlled Substance in Schedule I to V, 1st Offense; Richland County General Sessions Court, Columbia, South Carolina; Docket #2012-GS-40-4562; Sentence date: December 28, 2012; (see ¶ 57); (8) Conspiracy to Distribute Crack, 1st Offense; Richland County General Sessions Court, Columbia, South Carolina; Docket #2005-GS-40-4466; Sentence date: December 15, 2005 (see ¶ 47).

agreement also contained a provision under Fed. R. Crim. P. Rule 11(c)(1)(C) for an agreed upon sentence of 188 months. Additionally, within his Plea Agreement, the defendant agreed that a sentence of 188 months was appropriate even if he was found not to be a career offender pursuant to the Guidelines. (*Id*. at ¶ 8).

The Presentence Report (PSR) (ECF No. 518) prepared by the United States Probation Office determined that the defendant's 22 criminal history points placed him in a criminal history category of VI. Because of the defendant's previous convictions and because the instant offense involved a controlled substance offense, the defendant was determined to be a Career Offender under USSG § 4B1.1(b)(2). His base offense level was 30, plus 2 levels for possession of a firearm, for an adjusted level of 32. The level 32 was increased by 2 levels to 34 because the defendant was a Career Offender. The level 34 was decreased by 3 levels for acceptance of responsibility, leaving a total offense level of 31.

With a criminal history category of VI and an offense level of 31, the Guideline range became 188 to 235 months. This court sentenced the defendant on October 24, 2018 to a term of 188 months incarceration (the sentence agreed to in the Plea Agreement), followed by 6 years of supervised release.

The defendant filed an appeal of his conviction which was dismissed by the Fourth Circuit Court of Appeals pursuant to Fed. R. App. P. 41(a).[2] The defendant then filed a challenge to his sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel which this court denied on the merits (ECF No. 684).

---

[2] See *United States v. Sims*, No. 18-4798, mandate issued June 7, 2019.

2. *History and Characteristics of the Defendant*. The defendant is currently 46 years old. He has served just 36 months of his 188-month sentence. He is presently incarcerated at the Federal Correctional Institution Butner Low in North Carolina and his scheduled release date is September 4, 2030.

The defendant was born in Columbia, South Carolina and the PSR reveals that he experienced a normal upbringing in a conventional family setting. He is married with one child who continues to reside with his mother. His medical conditions have been adequately detailed earlier in this order.

At the time of his original sentence, the PSR reported the defendant's statements that he was in poor health, confirming his claimed diagnoses of congestive heart failure, COPD, and use of a defibrillator for his cardiac issues. (ECF No. 518, PSR at ¶101).

*Post-Sentencing Conduct*

While incarcerated, the defendant has not had any disciplinary infractions. Attachments to the defendant's motion reveal that while incarcerated, he has taken courses in the Nonresidential Drug Abuse Treatment Program, has served as a safe serve food handler, and was in the Letters From Dad program.

3. *Seriousness of the Crimes*. As noted herein, the court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*.  The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as an important factor to be addressed in considering the present motion. To release the defendant at this time would, in this court's view, present a clear danger to the public.

7.   *Need to Avoid Unwarranted Disparity*.  This court has carefully perused the sentences imposed on all of the other defendants in this case and, although the situations involved in some of the related sentencings were quite different, the court determines that the sentence imposed on defendant Sims, was not in any way disproportionate to the sentence imposed on similarly situated defendants.

For the foregoing reasons, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct, and vocational and educational credits.

## II.  *Career Offender Status*

As an alternative basis for relief, the defendant contends that his sentence today would not be as severe under the now- applicable Guidelines.  The defendant was determined to be

11

a Career Offender under the advisory Guidelines. The First Step Act made no changes to the predicate act requirements for career offender status under the Guidelines. Case law from the appellate courts has, to some extent, limited the availability of certain predicate acts, but unfortunately for the defendant, these decisions have no bearing on his case. The defendant was properly designated as a Career Offender when he was originally sentenced and would be so classified today.

In order to be classified as a career offender under the Guidelines, the defendant must "(1) be at least 18 years of age at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

The two predicate acts under USSG § 4B1.1 are defined as:

(a) [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

(b) [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

At the time the defendant committed the offenses in this case, he was at least 18 years of age. He had been previously convicted of distribution of crack cocaine, second offense, and pointing and presenting a firearm. Both of these two prior offenses still qualify as predicate offenses under the Career Offender Guidelines. Hence, the defendant's Career Offender designation was proper at the time of his original sentencing and would be proper today.

Moreover, the defendant pleaded guilty to Count 3 of the Superseding Indictment which charged him with violation of 21 U.S.C. § 841(b)(1)(c).

### III. *First Step Act § 401 and § 851 Enhancement*

Finally, the defendant argues that his sentence was improperly enhanced pursuant to 21 U.S.C. § 851. The court respectfully disagrees. As noted previously, the defendant pleaded guilty to Count 3 of the Superseding Indictment, charging him with a violation of 21 U.S.C. § 841(b)(1)(C). Section § 841(b)(1)(C) has been held by the Supreme Court not to be a covered offense under the First Step Act. In *Terry v. United States*, 141 S.Ct. 1858, 1862–63 (2021), the Supreme Court held that § 401 of the First Step Act did not apply in cases where the original conviction was under § 841(b)(1)(C). Therefore, changes to the definition of "predicate acts" under § 851 enhancements are not implicated in the defendant's case. Moreover, even if they were, at least one of the defendant's prior convictions charged under § 851 would still qualify if the defendant was sentenced after the First Step Act. Specifically, the prior convictions for manufacture/distribute ice, crank, and crack, 2nd offense (Docket No. 96-GS-40-17470) and for distribution of crack (Docket No. 96-GS-40-

13

17472) (which count as one conviction), would still be valid predicates supporting a 30-year maximum sentence under 21 U.S.C. § 841(b)(1)(C).

Accordingly, any changes made by the First Step Act would not be applicable to the defendant's case today on Count 3.

## CONCLUSION

On this record, the court concludes that even assuming that the defendant has demonstrated an extraordinary and compelling reason for compassionate release based upon his medical condition, this court would exercise its discretion not to order his immediate release after giving full consideration of the § 3553(a) factors and the defendant's post-sentencing conduct, including his educational and vocational credits. Accordingly, the defendant's motion for compassionate release (ECF No. 699) is respectfully denied.

The defendant's other claims regarding his career offender status are without merit and are denied accordingly.

IT IS SO ORDERED.

February 2, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge